BARTON BOLES, APPELLEE, v. LINCOLN TRACTION COMPANY, APPELLANT.

FILED JUNE 5, 1915. No. 18127.

Street Railways: PERSONAL INJURIES: CONTRIBUTORY NEGLIGENCE: QUESTION FOR JURY. Where it is claimed that a would-be passenger signaled for a street car to stop at a regular stopping place, and that the car slowed down to such a degree as to constitute an invitation to get on, and he was injured while attempting to board the car, the question of negligence in so doing is one of fact for the jury.

APPEAL from the district court for Lancaster county: P. JAMES COSGRAVE, JUDGE. *Affirmed.*

*C. S. Allen* and *Field, Ricketts & Ricketts,* for appellant.

*W. B. Comstock, John E. Lowe, George W. Miller* and
*Harry A. Reese, contra.*

MORRISSEY, C. J.

Plaintiff was injured while attempting to board one of
defendant's street cars running between Lincoln and Have-
lock.   He was then 14 years of age, and was employed
in a drug store in the business section of Lincoln.   Arriv-
ing at the intersection of Dudley and Twenty-seventh
streets, he awaited the arrival of a car to take him to the
place of his employment.   In the petition it is alleged that,
as one of defendant's cars approached this intersection, it
slowed down and stopped, thereby giving him a tacit invi-
tation to become a passenger; that in attempting to board
the car he took hold of the handhold with one hand, and
had stepped with one foot onto the running board, when
the car was negligently and violently jerked forward, and
he was thrown to the ground, and the rear wheels of the
car passed over his right foot, crushing it so badly as to ne-
cessitate the amputation of the greater part thereof.   The
answer is in the nature of a general denial, coupled with
an allegation of negligence on the part of the plaintiff.

On the trial the plaintiff did not attempt to prove that
the car came to an absolute stop, but only that it slowed
up to such a degree as to amount to a tacit invitation to
the plaintiff to board it.   There was a verdict and judg-
ment for plaintiff, and defendant has appealed, assigning
three separate grounds of error:   First, that the *allegata
et probata* do not agree.   This point was not called to the
attention of the trial court by any proper assignment in
the motion for new trial.   But, waiving this defect in the
record, and considering the assignment on its merits, we do
not find that there was such a variance between the plead-
ings and the proof as to prejudice the defendant, or as to
warrant reversal of the judgment.   The opening statement
of counsel for each party is preserved in the record, and
this shows that counsel for plaintiff made the following
statement:   "The evidence will show I think beyond ques-
tion that the car either came to an absolute stop, or so

near it that a man could walk right along with it and keep up with it, and the evidence will show that under the circumstances it was a situation that would invite any man to attempt to board it." Counsel for defendant, in making his statement immediately following, told the jury that as the car passed this intersection it was probably moving at the rate of 8 to 12 miles an hour, and he produced several witnesses who testified that the car did not stop or slacken its speed. No complaint was made at the trial that defendant was taken by surprise or misled in the preparation of its defense. This court has repeatedly held that "a variance between *allegata et probata* will not be held to be prejudicial, requiring a reversal of the judgment, where it appears that the party complaining was not actually misled or surprised to his disadvantage." *Ittner Brick Co. v. Killian,* 67 Neb. 589; *Parker v. Omaha Packing Co.,* 85 Neb. 515.

It is next contended that the evidence is insufficient to sustain the verdict. The car causing the injury is claimed by defendant to have been a special car sent out in the early morning for the purpose of carrying workmen from the city of Lincoln to the Burlington shops in the city of Havelock; that it was on its return from Havelock when this accident occurred; and that it was not engaged in local business, but that there was a car running immediately behind it to handle the local traffic. However this may be, it is conclusively shown that this car had picked up passengers before arriving at Dudley street, and that only one block to the north, and within full view of the plaintiff, it picked up a passenger, Mr. Mayer. Plaintiff testified that when the car reached the intersection of Dudley and Twenty-seventh streets it slowed up until it was moving so slowly that he could walk along side of it and keep up with it. He says that when he saw the car coming he walked out from the curb to the car line, and stood two or three feet from the car line waiting for the car; that the motorman saw him and slowed up to a rate about as fast as he could walk; it was a summer car with open sides and a running-board along its entire length; that he

let about one-half of the car go by, and then, seeing an empty seat, he took hold of the rod and stepped up with his feet on the running-board, and as he went to step into the body of the car it was suddenly jerked and he was thrown off. In this he is corroborated by Mr. Mayer, who had boarded the car one block from where this accident occurred. Mayer says that plaintiff stepped upon the running-board opposite the seat which he occupied, and about one foot from him; that as plaintiff got on the conductor signaled the motorman to go ahead; that the car gave a lurch; that the acceleration of speed was so sudden that it threw witness a little from his seat; and that plaintiff was thrown off. There was other testimony going to show that the car slowed up, and that as plaintiff stepped upon the running-board it was suddenly jerked forward. There is a sharp conflict in the evidence as to the rate of speed the car was moving when it crossed Dudley street and at the time plaintiff attempted to board it, estimates running all the way from four or five miles an hour to eight or ten miles an hour, and there is also a conflict as to whether or not there was any sudden acceleration of the rate of speed. The motorman was a witness for defendant, and testified to having "heard a noise on the foot-board, and the very next instant I heard the hind wheel run over something." This "something" was the boy's foot. In this connection it may be remarked that the witness Mayer testified that when he boarded the car only a block from where plaintiff was injured "the car slowed up for me and I jumped on." This was in plain view of the plaintiff, and it illustrates the method employed in at least one instance in receiving a passenger.

We are asked to hold that it was negligence *per se* to attempt to board a moving car. *Hunterson v. Union Traction Co.*, 205 Pa. St. 568, is the leading case cited by defendant in support of this contention. This opinion was rendered by a divided court, and seems to be against the weight of authority. In *Cicero & Proviso Street R. Co. v. Meixner*, 160 Ill. 320, and a number of authorities therein cited, it is held: "To board or depart from an electric

car while in motion is not negligence *per se.*" This court has held in *Omaha Street R. Co. v. Craig,* 39 Neb. 601, that whether alighting from a moving car constitutes negligence or not is a fact to be determined by the jury, taking into consideration all of the circumstances in evidence in the case. In principle there is no difference between alighting from a moving car and attempting to board one, and, if the person is injured while attempting to board a slowly moving car at a regular stopping station, the question of negligence is one of fact for the jury.

Defendant contends that it was gross negligence to attempt to board the car while it was moving, but, if the testimony of the boy is correct, it was not the speed of the car at the time that he stepped upon the running-board that caused the accident, but the sudden application of power and the acceleration of speed before he was given an opportunity to enter.

The court instructed the jury on the "last clear chance doctrine," and this instruction is assigned as error. But in the state of the record before us this instruction seems to have been properly given. Even assuming that the boy was guilty of negligence in jumping upon the running-board while the car was moving, yet, if the motorman knew that he was there, and his testimony indicates that he did, it would be his duty, so far as consistent with the safe and practical operation of the car, to allow him to reach a place of safety, and if in place of doing this he suddenly and negligently threw on the power and caused the car to lurch forward, and plaintiff was thereby injured, defendant would be liable, and we think the instruction was properly given.

The record being free from error, the judgment is

AFFIRMED.

LETTON, ROSE and HAMER, JJ., not sitting.