**Ralph COMPTON, Petitioner,**

v.

**Robbie Cecile JAY, Respondent.**

No. A–10295.

Supreme Court of Texas.

April 14, 1965.

Rehearing Denied May 12, 1965.

Kenley, Ritter & Boyland, Jack N. Price, Longview, for petitioner.

Jones, Brian, Jones & Baldwin, Marshall, for respondent.

NORVELL, Justice.

Robbie Cecile Jay recovered a judgment against Ralph Compton for personal injuries suffered in an automobile collision. The Court of Civil Appeals affirmed. 379 S.W.2d 933.

Petitioner Compton presents one point of error in which he contends that the trial court committed reversible error by receiving in evidence (in a jury case) proof of his prior felony convictions for driving a motor vehicle while intoxicated. Respondents contend that such convictions were admissible (a) to impeach the credibility of Compton as a witness and (b) to corroborate other evidence in the case which

tended to show that Compton was intoxicated when the collision giving rise to the present action occurred.

Respondent does not contend that the offenses of which petitioner was convicted involved moral turpitude, but does say that proof of any felony is admissible for impeachment purposes as bearing upon the witness' credibility. Cf. Traders & General Ins. Co. v. Russell, 99 S.W.2d 1079 (Tex. Civ.App., wr. dis. 1936); Drazen v. New Haven Taxicab Co., 95 Conn. 500, 111 A. 861.

In our opinion the prior convictions of the petitioner were not admissible either for impeachment or corroborating purposes as contended by respondent. We are further of the opinion that the error in admitting such convictions was reasonably calculated to cause and probably did cause the rendition of an improper judgment in the case. Casualty Ins. Co. of California v. Salinas, 160 Tex. 445, 333 S.W.2d 109, 90 A.L.R.2d 1056 (1960).

Before the trial, petitioner was required to answer written interrogatories concerning previous violations of traffic regulations. His answers revealed three convictions of the felony offense of driving while intoxicated—one in April, 1962, another in August, 1962, and a third in January, 1963, (the date of the collision involved here). He filed a motion in limine to restrain respondent from introducing evidence of the two prior convictions not directly connected with the suit. The trial court first granted the motion, but reversed its ruling just before the close of evidence, and allowed petitioner to be recalled and questioned concerning the admitted convictions.

At common law convictions of a felony or other "infamous crime" rendered a witness wholly incompetent to testify. This rule obtained in Texas in both civil and criminal cases until the enactment in 1925 of Art. 3717, Vernon's Ann.Tex.Stats., removing the incompetency in civil cases

of those who have been convicted of felonies. See, McCormick & Ray, "Texas Law of Evidence" (2d ed.) § 301. During the early development of Texas law the Supreme Court also formulated the rule that the credibility of a witness could be attacked only by showing his general reputation for lack of truth and veracity. Boon v. Weathered's Adm'r, 23 Tex. 675 (1859). This is still the general rule, but it is now quite clear that in Texas, as in most other jurisdictions, convictions of certain specific crimes are admissible for the purpose of impeaching a witness. The difficult question, and one which is the subject of much confusion both here and elsewhere, is what types of crimes may be used for this purpose.

Dean Wigmore in his treatise on Evidence (3rd ed.) § 926 says:

"In those jurisdictions in which veracity-character alone is allowed to be used to impeach, it would logically follow that when particular instances of misconduct are allowed to be used as throwing light on credibility—that is to say, convictions of crime, when shown by extrinsic evidence * * * —only such instances should be used as are *relevant to show a lack of truthfulness* of disposition,—for example, forgery, cheating and the like.

"Entire consistency, however, is not shown in thus carrying out the strict principle * * * although logic and policy alike require such a restriction."

Perhaps the earliest Texas case to uphold admission of proof of conviction to impeach a witness was Gulf, Colorado & Santa Fe Ry. Co. v. Gibson, 42 Tex.Civ. App. 306, 93 S.W. 469 (wr. ref., 1906). In that case the witness had been convicted of a felony, but had been pardoned by the Governor after agreeing to testify in the case. The court upheld the admission of the conviction on the ground that the traditional reasons for exclusion—unfair surprise and confusion of the issues—are ab-

sent when the record of judgment of conviction is introduced. The court did not indicate the nature of the crime involved, nor did it attempt to distinguish felonies from misdemeanors, but held only that "proof by the record of conviction of crime is universally conceded to be a proper mode of impeachment."

A distinction between misdemeanors and felonies was made in Huff v. McMichael, 60 Tex.Civ.App. 379, 127 S.W. 574 (no wr. hist., 1910). A witness had been convicted of mail fraud and the court, being of the impression that it was a misdemeanor due to the fine involved, held it inadmissible for impeachment. When, on motion for rehearing, it was shown that the conviction was of a felony, the court held that it was admissible, citing the Gibson case as controlling.

The Gibson and McMichael cases were cited with approval when, in Kennedy v. International-Great Northern R. Co., 1 S. W.2d 581 (Tex.Com.App., 1928), it was held to be error to exclude evidence that Kennedy, a party-witness, had been convicted of felony theft. After reviewing a number of cases, the Commission determined "that in no instance has the Supreme Court decided that proof of conviction of a felony, or even proof of conviction of a misdemeanor, is irrelevant or otherwise inadmissible for purposes of impeachment." It was, however, further stated in the opinion that:

> "In the present case the conviction was for a felony involving moral turpitude and upon a plea of guilty. We neither express nor imply an opinion about convictions of offenses of other kinds or about a conviction otherwise secured, but, upon principle and authority, we believe this evidence was improperly excluded."

The importance of the element of moral turpitude was emphasized in Texas & New Orleans Ry. Co. v. Parry, 12 S.W.2d 997 (Tex.Com.App., holding approved, 1929)

which more precisely defined the limited rule of admissibility. The trial court had excluded evidence concerning four thefts which an important witness had "practically admitted" in court, but for which no convictions were shown. While the Commission did not hold that such exclusion was erroneous upon the record before it, it did say in view of a reversal upon another point that:

> "The rule is that where the witness has been legally charged by indictment, complaint, or information and complaint, *with an offense involving moral turpitude*, and has been legally convicted of such offense in a court of competent jurisdiction, or where the witness has been so legally charged with such offense, and presently admits his guilt, then such matters are admissible in evidence touching his credibility as a witness." (Italics added.)

Although this statement is by way of dictum, it has been cited in most subsequent cases which consider the question. It is the basis for the analysis by two eminent writers that the Texas rule in civil cases is that proof of conviction of any crime—whether a felony or misdemeanor—may be shown only if it involves moral turpitude. See McCormick & Ray, Texas Law of Evidence (2d ed.) § 660; Lieck's Legal Trial Aid, 2d ed., p. 142.

The decisions of the Courts of Civil Appeals upon the point have not been uniform. Some have indicated that conviction of any felony is admissible for impeachment. See, Transport Ins. Co. v. Cossaboon, 291 S.W.2d 746 (Tex.Civ.App., 1956, wr. ref. n. r. e.); General Ins. Co. v. Handy, 267 S.W.2d 622 (Tex.Civ.App., wr. ref. n. r. e., 1954); York v. Glenn, 242 S.W.2d 653 (Tex.Civ.App., no wr. hist., 1951). The great majority of the cases, however, have adhered to the Parry rule, and have limited impeachment to those crimes involving moral turpitude. Travelers Ins. Co. v. Jordan, 339 S.W.2d 235 (Tex.Civ.App., wr. ref. n. r. e., 1960); Fenton v. Wade, 303 S.W.2d 816 (Tex.Civ.App., wr. ref., n.

r. e., 1957); Texas Employers' Ins. Ass'n v. Curry, 290 S.W.2d 767 (Tex.Civ.App., wr. ref., n. r. e., 1956); Evans v. Jacobs, 228 S.W.2d 545 (Tex.Civ.App., no wr. hist., 1950); Associated Employers Lloyds v. Tullos, 197 S.W.2d 210 (Tex.Civ.App., wr. ref., n. r. e., 1946); Kansas City, M. & O. Ry. Co. of Texas v. Foster, 38 S.W.2d 391 (Tex.Civ.App., no wr. hist., 1931).

■ While the term moral turpitude is not always explicitly defined by the cases, we believe that it represents a preferable standard to the arbitrary rule urged by respondent which would allow admission of any felony for purposes of impeachment. The term includes more than crimes of perjury, forgery and the like. See, Drazen v. New Haven Taxicab Co., 95 Conn. 500, 111 A. 861 (1920). And while the view which would limit attacks on credibility to proof of such logically relevant *crimen falsi* is very persuasive we do not feel disposed toward overturning a rule which originated with the approval of this Court and which has enjoyed wide acceptance in this state for many years. On the other hand, we are not disposed to relax the accepted rule so as to admit evidence which might have a highly prejudicial effect, although it would have little or no logical bearing upon the issue of credibility.

■ We are unable to agree with the holding of the Court of Civil Appeals that proof of petitioner's prior convictions was admissible to corroborate evidence tending to show that he was intoxicated at the time of the collision upon the theory that a "habit of intemperance" was shown thereby.

Upon the trial petitioner admitted pleading guilty to a charge of driving while intoxicated which arose out of the collision. He also testified that he had had "three or four beers," but denied that he was intoxicated or that his driving competency had been affected. On the other hand, there was no testimony offered to show that petitioner had a reputation for insobriety, or

that he drank habitually or even frequently. Further, evidence of the convictions was not brought forth until petitioner was recalled just prior to the closing of evidence, and no attempt was made to show for what purpose such convictions were introduced or to connect them with the collision in any way.

■ If there be some evidence indicating that a party was intoxicated at the time of the accident in question, it may be corroborated by evidence that he was frequently or habitually drunk. R. T. Herrin Petroleum Transport Co. v. Proctor, 161 Tex. 222, 338 S.W.2d 422 (1960); McCarty v. Gappelberg, 273 S.W.2d 943 (Tex.Civ.App., wr. ref., n. r. e., 1954); Robinson v. Lovell, 238 S.W.2d 294 (Tex.Civ.App., wr. ref., n. r. e., 1951); Lewis v. Houston Electric Co., 39 Tex.Civ.App. 625, 112 S.W. 593 (no wr. hist., 1905). See, also McCormick & Ray, 2d ed., Texas Law of Evidence, § 1512; 23 Tex.Jur.2d § 155. The question raised by the present case is whether such a history of intemperance is indicated by two isolated instances of driving while intoxicated.

In McCormick & Ray, 2d ed., § 162, habit is defined as a "regular response to a repeated specific situation," and it is stated that the phrase habits of intemperance "may denote a general disposition for excessive drinking, or may amount to a specific habit of drinking a certain number of glasses of whiskey every day * * * The probative force of such 'habits' to prove drunkenness on a particular occasion depends on the degree of regularity of the practice and its coincidence with the occasion."

The importance of the frequency of indulgence as a criterion for determining the existence of habits of intemperance is also emphasized by Wigmore. He says at § 96, 3d ed., that:

"In general, it would seem that, while a habit or fixed principle of abstaining from liquor would have value to show probable sobriety on a

given occasion, yet 'habits' of intemperance or intoxication could not be used for the contrary purpose; for the term 'habit' here signifies thereby frequent indulgences, and not constant or periodical intoxication. If indeed a *steady practice* of intoxication can be shown, it would be equally probative. By reason of this looseness of meaning in the word 'habit' the judicial applications of the principle are by no means uniform." (Italics supplied.)

The position adopted by these well known authorities is reflected in the cases cited by the Court of Civil Appeals. They hold that where a history of drunken behavior is established, such history may be received in evidence.

In Lewis v. Houston Electric Co., supra, it was held proper to admit testimony that on "many occasions" a party had been seen under the influence of intoxicating liquor. In the Gappelberg case, supra, the actual holding was that reversible error was committed in admitting evidence of a "history of intemperate habits" in the absence of direct evidence of intoxication at the time of injury. The dictum which is so earnestly relied on by respondents is merely to the effect that if there were other evidence of intoxication, it would be permissible to show that a party was "habitually intoxicated, or a drunkard." Again, in Robinson v. Lovell, supra, it was said that "if appellees' evidence is to the effect that appellant was drunk, and appellant's evidence is to the contrary, appellees may, by way of corroboration, offer evidence that appellant was frequently in a state of intoxication."

It is significant that these cases all speak in terms of a "history of drunkenness," or of being "habitually" or "frequently" drunk, and that none deals with the admission of specific or isolated instances of intoxication, such as are presented here. Rather, the established rule appears to be as is stated in Southern Traction Co. v. Kirksey, 222 S.W. 702 (Tex.Civ.App., no wr. hist., 1920):

"We think the fact that a person was in the habit of getting drunk, and while in such condition driving recklessly upon public highways, roads, and street crossings, would be a matter for the proper consideration of a jury as to whether or not he was intoxicated at the time of his injury, and we think that his habit in this regard could be proven by general reputation. *We do not think it would be permissible to prove particular or isolated instances as to his reckless driving while drunk*." (Italics ours.)

For the reasons above stated, the judgments of the courts below are reversed and the cause remanded to the District Court for another trial.

GRIFFIN, Justice (dissenting).

I agree with the opinion of the Court of Civil Appeals on the point that the evidence of previous convictions of a felony was admissible against the defendant Compton for impeachment and was to be considered by the trier of facts as affecting Compton's credibility.

The case of Boon v. Weathered's Administrator, 23 Tex. 675 (1895) did not involve the admissibility of a conviction of a felony, but dealt with questions of a witness' general reputation and a charge of the trial court instructing the jury not to believe such witness' testimony.

It must be kept in mind that the question before us is whether *a conviction* of a felony of the witness (who in our case is the defendant who had testified in this cause) may be proved as bearing upon the credibility of such witness.

An analysis of the cases on this point is found in Kennedy v. International-Great Northern Ry. Co. (Tex.Com. of App., 1928), 1 S.W.2d 581. In that case the distinction between a charge of a felony and a conviction of a felony is pointed out. The conviction there involved was of a felony theft, which clearly involves moral turpitude.

In the quotation from Dean Wigmore on Evidence, Third Edition, § 926, shown in the majority opinion, a very significant omission of the test is made. The omitted part reads:

"* * * In the first place, conviction of a crime is everywhere allowed to be used as affecting credibility of character, and while distinctions are sometimes made as to the grade of the crime, little effort is made to employ those crimes which directly involve lack of honesty."

Again Dean Wigmore, § 980, says:

"It has therefore been universally acknowledged that proof of a crime by *record of a judgment of conviction* may be made, not because an exception is carved out of the rule, but because the reason of the rule does not apply."

In that same paragraph on page 538, Dean Wigmore says:

"*What crimes are relevant* to indicate bad character as to credibility? There are here three answers possible on principle:

"(a) Whatever offences were formerly treated as *disqualifying* one entirely as a witness shall now be treated as available for impeachment. This is the commonest solution, and has come about usually by express proviso in the statutory abolition of the former disqualification;

"(b) If in a given jurisdiction general bad character is allowable for impeachment, then *any offence* will serve to indicate such bad character; [this rule does not apply in Texas.]

"(c) If character for veracity alone is allowable for impeachment, then only such specific offences may be used as indicate a lack of *veracity-character*." [All emphasis in quotation that of Wigmore.]

The reasoning of the majority is not consistent with either of Dean Wigmore's three subdivisions.

Most writers on the subject agree that being convicted of an "infamous crime" was the basis of the common law bar to such witnesses being permitted to testify. According to (a) above by Dean Wigmore, a common law disqualification is the basis for allowing impeachment of a witness convicted of a crime.

We have cases in Texas stating what is an infamous crime. All agree that a crime which may be punished by confinement in the penitentiary is an infamous crime. In Texas a "felony" is defined by statute (Art. 47, Penal Code, State of Texas) as one for which confinement in the penitentiary may be assessed as punishment. The majority recognizes that a conviction of a felony, prior to 1925, disqualified a witness from testifying in Texas.

At common law whether or not the crime was an infamous one was determined by the nature of the crime and not by the punishment assessed. But this rule has since been expressly disapproved, the modern test being whether the offense is one for which the statute authorizes the court to award an infamous punishment, and not the nature of the criminal act, or whether the punishment awarded is an infamous one.

"With respect to what punishments are considered infamous the courts are agreed that an offense which is punishable by imprisonment in a prison or penitentiary is infamous." Note in 24 A.L.R. 1004, following the case of United States of America v. Moreland, 258 U.S. 433, 42 S.Ct. 368, 66 L.Ed. 700 (1922).

Another reason why we should not follow the majority opinion is that such ruling is directly contrary to the well-recognized holding of our Court of Criminal Appeals as shown in numerous cases. Among some of the more recent see: Mauldin v. State, 165 Tex.Cr.R. 405, 308 S.W.2d 36; Ward-

rope v. State, 170 Tex.Cr.R. 305, 340 S.W. 2d 498; Parker v. State, 83 Tex.Cr.R. 77, 201 S.W. 173.

It has heretofore been the policy of this Court to agree with the Court of Criminal Appeals' decisions whenever reasonably possible to do so. There is no need to add confusion to the law of evidence by our having a rule of evidence contrary to the one long established in the Court of Criminal Appeals.

Another good reason why the rule in this case should not be as declared in the majority opinion is that the determination of what constitutes a conviction of a felony is much more simple than the determination of what offenses involve moral turpitude. Various judges will have various ideas on this question and there being no existing body of judicial decisions defining with exactitude what offenses involve "moral turpitude," we will again have uncertainty.

Dean McCormick in his "Evidence" Hornbook Series, West Publishing Company, pp. 90–91, points out the uncertainty that results from the requirement that conviction for a crime must involve "moral turpitude" to be admissible as impeachment of a witness. He then says: "Moreover, it seems that shifting the burden to the judge's discretion is inexpedient since only in a minority of cases will the judge have adequate information upon which to exercise such discretion. *A clear, certain rule like the English one is preferable, despite its somewhat arbitrary character.*" (Emphasis added.) The English rule makes conviction of "any felony" admissible for impeachment.

Another reason for not agreeing with the majority opinion is that it represents the prevailing view of only a very few jurisdictions. By far the majority of the states permit proof of conviction of a felony to impeach a witness.

I would affirm the judgment of the Court of Civil Appeals.

HAMILTON, J., joins in this dissent.